UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Docket No. 2:25-CR-19-9-WKS |
| | ) | |
| JIMMY YLIMAKI, a.k.a. "Coop," | ) | |
| Defendant. | ) | |

**MOTION FOR DETENTION**

The United States of America moves for the pretrial detention of defendant Jimmy Ylimaki, a.k.a. "Coop," (Jimmy)[1] pursuant to 18 U.S.C. § 3142(e) and (f). The United States does not invoke the rebuttable presumption in favor of detention pursuant § 3142(e) and respectfully requests that the Court conduct the detention hearing upon completion of the pretrial services report.

Eligibility for Detention

Jimmy is eligible for detention because the case involves a serious risk that he will flee. *See* 18 U.S.C. § 3142(f)(2)(A). "[T]o justify a detention hearing, the government need not predict the future with proof that a defendant actually will flee. Instead, it must only show by a preponderance of the evidence that there is a serious *risk* that [a defendant] will flee." *United States v. Marroquin-Ramirez*, 778 F. Supp. 3d 498, 502 (N.D.N.Y. 2025) (emphasis in original) (quotation marks and citation omitted); *see United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986) ("Before preventive detention may be ordered . . . the court is obliged to determine both whether the defendant is likely to flee the jurisdiction if released, and whether any conditions of release will be reasonably certain to guard against this propensity to flee."). Critically, "this

---

[1] Jimmy Ylimaki's brother, Ricky Ylimaki, is his co-defendant. To avoid the confusion that could be caused by their shared surname, the United States will refer to each brother by their first name throughout the pendency of the case.

1

threshold burden is extremely light: evidence concerning a variety of factors can establish a serious risk of flight that warrants a detention hearing under § 3142(f)(2)(A)." *Marroquin-Ramirez*, 778 F. Supp. 3d at 503.

Reason For Detention

The Court should detain Jimmy because there are no conditions of release that will reasonably assure his appearance as required.  Jimmy faces a maximum sentence of 20 years of imprisonment.  The United States estimates that the term of imprisonment suggested by the United States Sentencing Guidelines exceeds 20 years, indicating that Jimmy could potentially receive the statutory maximum sentence.  The significant sentence Jimmy faces provides him with an equally significant incentive to flee.  Jimmy is a Canadian citizen who has no legal status in the United States.  Were he to be released and return to Canada, the United States Probation Office would be unable to supervise him by virtue of his presence in a foreign country.  Moreover, to obtain his presence for trial, the United States would be required to seek his extradition from Canada – a process that could delay trial for years.

  i.  *Nature and Circumstances of the Offense Charged*

The "grandparent scam" is a telemarketing fraud scheme involving phone calls made to elderly individuals.  The initial callers typically pose as a member of the elderly victim's family (usually a grandchild) and claim – falsely – to be in legal trouble, such as a motor vehicle accident.  A second person posing as an "attorney" representing the family member (the role played by Jimmy) then states that the elderly victim of the scam needs to provide a large sum of cash – typically thousands or tens of thousands of dollars – to bail the family member out of jail.  The "attorneys" involved in this scam often identify themselves by various fictitious names, which sometimes are re-used in connection with calls to multiple elderly victims.  Callers utilize a highly

2

manipulative script,[2] which has been crafted over time to refine the deception that is at the heart of the scam. The elderly victim is then instructed to provide the "bail money" to a "bail bondsman" who comes to the elderly victim's home to collect the money later the same day.

The indictment alleges that the conspiracy in which Jimmy participated ran from the summer of 2021 through June 4, 2024. During just 67 weeks of this approximately three-year period, accounting records created by members of the conspiracy demonstrates that the conspiracy yielded more than $21 million of profits, taken from elderly American in approximately 45 different states. Recently obtained evidence suggests that the conspiracy began as early as 2019. Thus, the $21 million of profits reflected in the accounting records do not even include approximately three years of additional profits.

     *ii.*     *History and Characteristics of the Defendant*

Jimmy is a Canadian citizen. His appearance in the United States District Court for the District of Vermont follows his apprehension in and removal from Nicaragua. Flight records show that shortly after Canadian law enforcement executed search warrants at the telemarketing fraud call center where Jimmy worked (discussed further below), Jimmy fled Canada for Costa Rica. In early 2026, law enforcement searched a cell phone belonging to one of Jimmy's associates. In addition to Jimmy's cell phone number and passport, the device contained screenshots of news articles related to the extradition of federal defendants from Costa Rica to the United States. Thus, Jimmy's subsequent flight from Costa Rica to Nicaragua – which historically has refused U.S. extradition requests – appears to have been motivated by a desire to evade prosecution.

---

[2] An example of the script, seized by Canadian law enforcement on June 4, 2024, is attached as Exhibit 1.

Jimmy appears to have amassed significant profits from his participation in the conspiracy. Accounting records show that during a 67-week period within the approximately three-year conspiracy, Jimmy was paid more than $367,000.  As noted above, this sum does not include as much as three years of additional pay to Jimmy.   These resources could be used by Jimmy to fund his flight and continued evasion of law enforcement.  Moreover, members of the conspiracy in which Jimmy participated frequently transacted in cryptocurrency, making it difficult to ascertain the true extent of Jimmy's resources.  Furthermore, Jimmy appears to own property in Costa Rica. His foreign assets provide further means for him to evade prosecution.

Finally, Jimmy and his co-conspirators used encrypted communication applications, such as Signal and Telegram, and frequently changed their cell phones and SIM cards, demonstrating that Jimmy is adept at overcoming electronic surveillance, which could further thwart law enforcements efforts to re-locate him were he to flee after being released.

   iii.     *Weight of the Evidence*

Jimmy was caught red-handed.  On June 4, 2024, Canadian law enforcement executed search warrants at the call centers in Quebec where Jimmy and his co-conspirators worked. Jimmy was found hiding in a call center bathroom.  Jimmy and others were found to have been in the act of placing phone calls to elderly Americans just prior to the execution of the search warrants.  Like his co-conspirators, Jimmy worked out of an "office" in a call center.  On Jimmy's desk, Canadian law enforcement found multiple cell phones and spreadsheets containing the names, addresses, phone numbers, ages, and annual income of elderly Americans.[3]

Jimmy's cell phones contain extensive evidence of his participation in the grandparent scam.  Call logs show calls to Pennsylvania, Alabama, Florida, South Carolina, and New Jersey.

_____

[3] One of the many hundreds of "victim call lists" seized by Canadian law enforcement on June 4, 2024, is attached as Exhibit 2.

Many of Jimmy's co-defendants are saved as contacts, and one particular cell phone was used exclusively by Jimmy to communicate with co-conspirators. This cell phone contains many text messages in which Jimmy communicates with co-conspirators about their collective efforts to defraud specific elderly victims. For example, in just one of many text message conversations, Jimmy tells a co-conspirator that an elderly victim in New Jersey is prepared to provide $19,000. Jimmy's co-conspirator informs him that a "bail bondsman" – with whom the co-conspirator is simultaneously communicating – will pick up the money. The co-conspirator tells Jimmy the fake name the "bail bondsman" will use and states that the "bail bondsman" is just over an hour away from the elderly victim's home – allowing Jimmy to relay this information to the elderly victim. Jimmy eventually informs his co-conspirator that the elderly victim gave the money to the "bail bondsman."

In another message, Jimmy tells a co-conspirator, "It's your lucky day to get a deal!!!!" The co-conspirator responds, "I got one yesterday lol. I'm dialing as we speak."

<u>Conclusion</u>

For the reasons set forth above, the United States respectfully requests that the Court order Jimmy's detention pending trial.

Dated at Burlington, in the District of Vermont, March 23, 2026.

Respectfully submitted,

*/s/ Nathanael T. Burris*
NATHANAEL T. BURRIS
Assistant U.S. Attorney
P.O. Box 570
Burlington, VT 05402-0570
(802) 951-6725